UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY MALONE LOGSDON,                                              Plaintiff,

v.                                                             Civil Action No. 3:16-cv-759-DJH-CHL

COMMISSIONER OF SOCIAL SECURITY,                         Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Mary Malone Logsdon filed this action seeking review of the decision by the Commissioner of Social Security to deny her application for disability-insurance benefits. (Docket No. 1) Logsdon alleges disability due to arthritis and nervousness caused by depression and anxiety. (D.N. 12-1, PageID # 498) Logsdon has now moved for summary judgment, requesting that the Court remand this case to the agency for payment of benefits or further administrative proceedings. (D.N. 12; D.N. 12-1) The matter was referred to Magistrate Judge Colin H. Lindsay for report and recommendation. (D.N. 11) Judge Lindsay issued Findings of Fact, Conclusions of Law, and Recommendation on February 22, 2018, recommending that the Commissioner's decision be affirmed. (D.N. 17) Logsdon timely filed objections to Judge Lindsay's report and recommendation. (D.N. 18) After careful consideration, the Court concludes that only one of Logsdon's objections has merit. Sustaining that objection, however, requires reversal and remand of the case to the Commissioner of Social Security.

**I.**

On August 5, 2013, Logsdon filed an application for disability-insurance benefits. (D.N. 10-5, PageID # 292-98) The Commissioner denied the application on November 7, 2013, and again upon reconsideration on January 6, 2014. (D.N. 10-4, PageID # 171-74, 184-90) Logsdon

1

thereafter requested a hearing before an administrative law judge. (*Id.*, PageID # 176) Administrative Law Judge John R. Price held a hearing on April 21, 2015. (D.N. 10-2, PageID # 101-10) The ALJ held another hearing via videoconference on August 13, 2015. (*Id.*, PageID # 73-100) On October 7, 2015, the ALJ issued an opinion finding Logsdon not disabled. (*Id.*, PageID # 51-71) The ALJ determined that Logsdon possessed the residual functional capacity (RFC)[1] necessary to perform "light work" as defined in 20 C.F.R. § 404.1567(b). (*Id.*, PageID # 60-65) Further, the ALJ found Logsdon capable of performing her past relevant work as a sewing-machine operator. (*Id.*, PageID # 65) The appeals council denied Logsdon's request for review on October 26, 2016. (*Id.*, PageID # 44-48)

Logsdon filed this action on December 1, 2016, challenging the denial of her application for disability-insurance benefits. (D.N. 1) Logsdon has moved for summary judgment (D.N. 12), arguing that the ALJ erred in finding that her only severe impairments were generalized arthritis and a history of obesity, assessing her RFC, determining that she could perform her past relevant work, and concluding that she was not disabled. (D.N. 12-1) Magistrate Judge Colin H. Lindsay issued a report and recommendation on February 22, 2018. (D.N. 11; D.N. 17) Judge Lindsay recommends that this Court affirm the Commissioner's decision. (D.N. 17, PageID # 559) As discussed below, the Court's disagreement with the report and recommendation is limited to its analysis of Logsdon's argument that the ALJ did not properly consider her lack of insurance as a reason for her failure to obtain medical treatment for some conditions. (*See id.*, PageID # 547) Because the ALJ relied heavily upon Logsdon's lack of treatment in concluding that her complaints regarding her conditions were less than credible, however, remand is required.

---

[1] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

2

## II.

When reviewing a report and recommendation, this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which an objection is not made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Lindsay's report and recommendation to which Logsdon objects to determine whether relief is warranted.

As detailed in Judge Lindsay's report and recommendation, the Commissioner has promulgated regulations setting forth a five-step sequential process for evaluating whether a claimant is disabled. (D.N. 17, PageID # 542-43 (citing 20 C.F.R. § 404.1520)) Only steps four and five are at issue in Logsdon's objections. (D.N. 18, PageID # 561, 573) At step four, the ALJ compares the claimant's RFC with the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can still do that kind of work, then the Commissioner will find that she is not disabled, and the analysis ends there. *Id.* The claimant has the burden of proof at step four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At step five, the ALJ considers the claimant's RFC with her age, education, and work experience to determine whether she can make an adjustment to other work. 20 C.F.R. § 404.1520(g). If the claimant cannot make such an adjustment, then the Commissioner will find that she is disabled. *Id.* The Commissioner has the burden of proof at step five. *Walters*, 127 F.3d at 529.

In reviewing an ALJ's decision, the Court asks "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Where substantial evidence supports the ALJ's decision, the Court "must affirm." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 466 (6th Cir. 2017) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Moreover, "[t]he findings of the [ALJ] are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## III.

**A.    The ALJ's RFC Assessment**

First, Logsdon argues that the ALJ "erred as a matter of law in assessing [her] RFC in Finding No. 5 of his decision and this finding is not supported by substantial evidence." (D.N. 18, PageID # 562)  Logsdon's objections identify several issues with the ALJ's assessment; the Court will discuss each one in turn.

Logsdon challenges the ALJ's failure to find that she had severe arthritis in her lower back, knees, and feet. (*Id.*) Specifically, Logsdon argues that this severe arthritis prevented her from standing for eight hours per day and operating foot controls on a frequent basis, both of which were a necessary part of her past relevant work. (*Id.*) But the ALJ found that Logsdon had two severe impairments: generalized arthritis and a history of obesity. (D.N. 10-2, PageID # 56) After an ALJ finds one severe impairment, he must continue with the remaining steps in his disability evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Thus, an ALJ does not commit reversible error by failing to list additional severe impairments because she was already required to consider all impairments, severe and nonsevere, in the remaining steps of the analysis. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016) (rejecting argument that ALJ reversibly erred by failing to also list thyroid disease as a severe impairment where ALJ found several other severe impairments). The record here shows that the ALJ considered Logsdon's arthritis in her knees, lower back, and feet when determining her RFC. (D.N. 10-2, PageID # 60-65) The Court therefore agrees with Judge Lindsay that the ALJ did not reversibly err in this regard. (D.N. 17, PageID # 545-46) *See Kepke*, 636 F. App'x at 634 (concluding that ALJ did not reversibly err by failing to list thyroid disease as severe impairment where record showed that ALJ considered thyroid disease in determining claimant's RFC).

Logsdon also argues that the ALJ wrongly found her subjective complaints regarding her physical and mental limitations to be less than credible, partly due to her lack of treatment for those limitations. (D.N. 18, PageID # 562) Specifically, Logsdon asserts that the ALJ and Judge Lindsay failed to fully consider the fact that she lacked health insurance and could not afford the

5

physical therapy doctors recommended, dreaded going to doctors, and feared surgery. (*Id.*, PageID # 563, 565)

"[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. However, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.*

The record shows that the ALJ discounted Logsdon's credibility in part because she did not undergo knee surgery, visit the emergency room, or have extended hospital stays for any condition. (D.N. 10-2, PageID # 63) But the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain . . . failure to seek medical treatment." *Stennett v. Comm'r of Soc. Sec.*, 476 F. Supp. 2d 665, 673 (E.D. Mich. 2007) (quoting SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996)).[2] Although it appears that the ALJ considered Logsdon's testimony that she did not like going to see doctors and feared surgery (D.N. 10-2, PageID # 60), there is no mention in the ALJ's opinion of Logsdon's alleged lack of insurance and inability to afford certain treatments. In fact, medical records show that when Logsdon's arthritis worsened, a doctor felt that physical therapy would be beneficial but Logsdon was unable to afford it because she lacked insurance.

---

[2] The Court notes that this Social Security ruling was superseded in 2016 by SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). Thus, SSR 16-3P was not in effect at the time the ALJ made his October 2015 decision in this case. (D.N. 10-2, PageID # 51-71) There is disagreement within this circuit as to whether SSR 16-3P should apply retroactively. *See Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *9-10 (N.D. Ohio June 22, 2017). The Court need not determine the retroactivity issue here, however, because both SSR 96-7P and SSR 16-3P instruct the ALJ to consider a claimant's explanations for failure to seek medical treatment. *See* SSR 16-3P, 2016 WL 1119029, at *8-9 (Mar. 16, 2016); SSR 96-7P, 1996 WL 374186, at *7-8 (July 2, 1996).

(D.N. 10-7, PageID # 476) The Court will therefore sustain Logsdon's objection to the extent that the ALJ failed to consider her lack of insurance before discounting her credibility on the basis of her "limited" and "conservative" care. (D.N. 10-2, PageID # 63) *See Rich v. Comm'r of Soc. Sec.*, No. 1:12-cv-255, 2013 WL 5329515, at *4-6 (W.D. Mich. Sept. 23, 2013) (citing SSR 96-7P in finding that ALJ's credibility determination was not supported by substantial evidence and remanding agency decision for Commissioner to reevaluate claimant's credibility in light of her explanation that she could not afford medical treatment). Given the ALJ's repeated references to Logsdon's failure to obtain medical treatment and the "conservative" care she obtained for her alleged conditions (*see* D.N. 10-2, PageID # 61-63), the Court is unable to conclude that his apparent failure to consider Logsdon's lack of insurance was harmless error. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) ("[A]n agency's decision will be reversed upon a 'showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" (quoting *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983))).

Relatedly, Logsdon asserts that the ALJ and Judge Lindsay ignored "key evidence" showing that she could no longer perform the physical demands of her past work, which included standing all day and frequently using foot controls. (D.N. 18, PageID # 564) In particular, Logsdon points to evidence of her knee and back problems. (*Id.*) However, the ALJ considered Logsdon's own testimony regarding her knee and back pain, as well as medical evidence recounting Logsdon's knee and back issues, in determining the RFC in this case. (D.N. 10-2, PageID # 60-65) The Court therefore rejects Logsdon's argument that the ALJ and Judge Lindsay ignored this evidence.

Logsdon further argues that the ALJ and Judge Lindsay failed to consider "the combined effects of these two severe impairments [i.e., arthritis and obesity] in assessing [her] RFC." (D.N. 18, PageID # 565) The ALJ found that medical evidence supported a diagnostic history of obesity in this case. (D.N. 10-2, PageID # 62) Further, the ALJ noted that obesity "may have an adverse impact upon co-existing impairments," including arthritis. (*Id.*, PageID # 62-63) The ALJ took those considerations into account "even though no treating or examining medical source [had] specifically attributed additional or cumulative limitations to [Logsdon's] history of obesity." (*Id.*, PageID # 63) Thus, Logsdon's argument lacks merit.

Next, Logsdon asserts that the ALJ and Judge Lindsay "failed to follow the basic rules regarding the analysis of [medical] opinions." (D.N. 18, PageID # 565) Logsdon specifically challenges the ALJ's decision to give "no weight" to the opinion of Dr. Greg Lynch, an examining consultative psychologist, and "[g]reat weight" to the opinion of a nonexamining consultative psychologist. (*Id.*, PageID # 566; *see* D.N. 10-2, PageID # 58-59) Unlike treating-source opinions, opinions from nontreating (i.e., examining) and nonexamining sources are never assessed for "controlling weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Instead, the Commissioner weighs these opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). Generally, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Id.* at 375 (citing 20 C.F.R. § 404.1527(c)(1)).

Here, the ALJ indeed gave "great weight" to the opinion of an agency reviewing psychologist while giving "no weight" to the opinion of Dr. Lynch, who examined Logsdon. (D.N. 10-2, PageID # 57-59) The ALJ explained that the assessment of the agency's reviewing

8

psychologist appeared "consistent with the record on whole," whereas Dr. Lynch's assessment was "not supported by any mental health treatment or consistent complaints." (*Id.*, PageID # 58-59) Logsdon argues that this explanation is insufficient. (*See* D.N. 18, PageID # 567-68) But an ALJ is "under no special obligation" to provide great detail as to why nonexamining opinions are more consistent with the overall record "insofar as he [is] weighing the respective opinions of nontreating versus nonexamining sources." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007)). Rather, the ALJ must adequately explain and justify his determination. *See id.* The Court concludes that the ALJ adequately explained his decision to assign greater weight to the opinion of the agency's nonexamining reviewing psychologist. Logsdon's objection with respect to the ALJ's analysis of medical opinions will therefore be overruled.[3]

Finally, Logsdon argues that the ALJ erred by failing to include any mental limitations in his RFC finding. (D.N. 18, PageID # 569) In particular, Logsdon claims that the ALJ never considered the fact that she did not socialize with friends or neighbors, did not attend social events, no longer went to church, had difficulty remembering things, was unable to sleep regularly, had crying spells, and suffered from insomnia and fatigue. (*Id.*, PageID # 569-70)

As the ALJ recognized in his opinion, he was required to consider all of Logsdon's impairments, including those that are not severe, in determining her RFC. (D.N. 10-2, PageID # 55 (citing 20 C.F.R. § 404.1545)) In determining Logsdon's RFC, the ALJ noted that she

---

[3] Logsdon asserted in her objection that "[t]here is also no medical or other evidence of record from a doctor that has actually seen [her] that she could occasionally climb ladders, ropes[,] and scaffolds as the ALJ found that she could do." (D.N. 18, PageID # 568) However, in so finding, the ALJ relied on an assessment from a reviewing medical doctor who determined that Logsdon could climb ladders, ropes, and scaffolds occasionally. (D.N. 10-2, PageID # 64-65; *see* D.N. 10-3, PageID # 142) Although that doctor might not have seen Logsdon, ALJs are permitted to rely on the opinions of nontreating and even nonexamining medical sources. *See Norris*, 461 F. App'x at 438-40.

9

reported "not liking to be around people, forgetfulness, and trouble concentrating" and "ongoing emotional symptoms." (*Id.*, PageID # 63) However, Logsdon had declined mental-health treatment,[4] only recently started taking psychotropic medications, and showed no sign of distraction at the hearing. (*Id.*) Nonetheless, the ALJ found Logsdon's depression and anxiety to be "non-severe impairments." (*Id.*) The ALJ was therefore required to consider these impairments in determining Logsdon's RFC. *See* 20 C.F.R. § 404.1545. The record shows that the ALJ appropriately considered Logsdon's reported mental impairments. (D.N. 10-2, PageID # 63; *see also id.*, PageID # 58-59) Still, Logsdon asserts that the ALJ should have accepted the findings of Dr. Lynch or found mental limitations consistent with "a mild limitation in concentration, persistence, or pace." (D.N. 18, PageID # 570) As explained above, the ALJ did not err in giving no weight to the opinion of Dr. Lynch.

Logsdon's second assertion appears to refer to the "four broad functional areas" in which the agency rates claimants' degrees of functional limitation. *See* 20 C.F.R. § 404.1520a(c)(3). Psychologists use this rating system when they complete their "psychiatric review technique" (PRT) forms. *See Jackson v. Astrue*, No. 4:10-CV-00060-EHJ, 2010 WL 5290503, at *3-4 (W.D. Ky. Oct. 22, 2010); *Tuck v. Astrue*, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *4-5 (W.D. Ky. Feb. 19, 2008). And as the Sixth Circuit has noted, an ALJ's findings regarding PRT forms are not relevant to the RFC determination. *See Furst v. Comm'r of Soc. Sec.*, 208 F.3d 213 (6th Cir. 2000) (unpublished table disposition) (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)) ("[T]he ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the claimant] had a severe impairment and whether her condition was equivalent to any of the

---

[4] The Court has already concluded that the ALJ must consider on remand Logsdon's lack of insurance as a reason for her failure to seek treatment. *See supra*. That conclusion applies equally here with respect to Logsdon's failure to accept mental-health treatment.

10

impairments that are listed in Appendix A to the regulations."). The Court thus finds that the ALJ did not err in failing to include any mental limitations in his RFC finding.

**B.    The ALJ's Finding Regarding Past Relevant Work**

Logsdon next argues that the ALJ's Finding No. 6 that she was able to perform her past relevant work "was reached by error of law and is not supported by substantial evidence." (D.N. 18, PageID # 570)  Logsdon asserts that there is "not one medical opinion of record to support the ALJ's implied finding that [she] was capable of standing for eight hours a day while frequently operating foot controls." (*Id.*, PageID # 571)

The ALJ acknowledged Logsdon's report that she did not think she could return to her previous work due to her inability to stand all day. (D.N. 10-2, PageID # 60)  But Logsdon was found to have normal gait and station[5] in June 2012, normal gait and station in October 2013, mild antalgic gait[6] later in October 2013 without use of an assistive device, and slight antalgic gait in May 2015 with no apparent distress. (*Id.*, PageID # 61-62; *see* D.N. 10-7, PageID # 476, 491, 401, 469)  At the hearing, Logsdon estimated that she could stand for only twenty-five or thirty minutes; however, the ALJ noted in his opinion that she had "only conservative treatment" during the relevant time period. (D.N. 10-2, PageID # 63)  To the extent that the ALJ relied upon Logsdon's lack of treatment in concluding that she could perform light work (including standing all day and frequently operating foot controls), such reliance was in error in the absence of consideration of Logsdon's lack of insurance.[7]  *See supra* Section III.A.

---

[5] "Gait means walking, and station refers to the posture used in standing and walking." *Autry v. Astrue*, No. 5:07-CV-00113-J, 2008 WL 345524, at *5 (W.D. Ky. Feb. 7, 2008) (citation omitted).

[6] An "antalgic gait" is known colloquially as a limp. *Cox v. Colvin*, No. 3:12-CV-866-H, 2014 WL 1117527, at *3 n.25 (W.D. Ky. Feb. 28, 2014).

[7] A vocational expert testified that someone with Logsdon's RFC would be able to perform her past relevant work both as it is generally performed and as she performed it. (D.N. 10-2, PageID

In addition, Logsdon asserts that her mental limitations "prevented her from paying attention and dealing with the work pressures of [her] fast-paced production job." (D.N. 18, PageID # 572) Logsdon again attacks the ALJ's failure to either accept Dr. Lynch's findings regarding her mental capabilities or find limitations in concentration, persistence, or pace. (*Id.*) The Court has already concluded that the ALJ did not err in either regard. *See supra* Section III.A.

Finally, Logsdon posits that this case "should have proceeded to Step 5" to determine whether she was capable of performing "other work." (D.N. 18, PageID # 573 (citations omitted)) However, an ALJ does not commit error in failing to proceed to step 5 where the step 4 analysis results in a finding that the claimant can perform past relevant work. *See Klein v. Comm'r of Soc. Sec.*, No. 3:14-cv-78, 2015 WL 4550786, at *4 (S.D. Ohio Mar. 24, 2015); *Chhay v. Colvin*, No. 1:13-cv-02229, 2014 WL 4662024, at *10 (N.D. Ohio Sept. 17, 2014). Therefore, the ALJ need not proceed to step 5 on remand unless he finds at step 4 that Logsdon is unable to perform her past relevant work.

### IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Logsdon's objection (D.N. 18, PageID # 563-64) to the ALJ's failure to consider Logsdon's lack of insurance as a reason for her limited medical treatment is **SUSTAINED**. The

---

# 95)  The ALJ relied on this testimony in finding that Logsdon was capable of performing her past relevant work. (*Id.*, PageID # 65)  Therefore, the ALJ's finding with respect to past relevant work was only erroneous to the extent that the ALJ erred initially in assessing Logsdon's RFC.

Court declines to adopt the Findings of Fact, Conclusions of Law, and Recommendation as to that issue. (D.N. 17, PageID # 547) All other objections are **OVERRULED**.

(2) The balance of Magistrate Judge Lindsay's Findings of Fact, Conclusions of Law, and Recommendation (D.N. 17) is **ADOPTED** and **INCORPORATED** by reference herein.

(3) Logsdon's motion for summary judgment (D.N. 12) is **GRANTED** insofar as it seeks reversal of the Administrative Law Judge's decision and remand for a new hearing.

(4) A separate judgment will be entered this date.

March 22, 2018

**David J. Hale, Judge**
**United States District Court**